CITY OF OREGON, APPELLANT, *v.* FERGUSON, AUDITOR
ET AL., APPELLEES.*

[Cite as Oregon v. Ferguson (1978), 57 Ohio App. 2d 95.]

(No. 77AP-668—Decided March 2, 1978.)

*Messrs. Neipp, Dorrell & Wingart,* and *Mr. C. Duane Callender,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mr. Gene W. Holliker,* for appellees.

STRAUSBAUGH, J. This is an appeal by plaintiff from a judgment of the Court of Claims dismissing plaintiff's complaint for a failure to state a claim upon which relief may be granted.

Plaintiff brought its action pursuant to R. C. 2743.03, alleging the following.

"2. That it is now, and has been since November, 1958, a Charter Municipal Corporation organized under the constitution and laws of the State of Ohio.

"3. That its charter provides for a Clerk-Auditor to be elected as provided therein; that one Hildred Fox was elected to that position as Plaintiff's first Clerk-Auditor. On July 15, 1975 the Defendant, Bureau of Inspection and

---

*Reporter's Note: A motion to certify the record was overruled by the Supreme Court of Ohio, July 6, 1978.

Supervision of Public Offices made a finding against said Hildred Fox, as Clerk-Auditor, in the amount of Two Hundred Forty Nine Thousand, One Hundred Fifty One and 07/100 Dollars ($249,151.07). The office of Clerk-Auditor is a public office within the meaning of Section 117.09, Ohio Revised Code.

"4. That it is a taxing district within the meaning of Section 117.01 et seq., Ohio Revised Code.

"5. The Defendant, Thomas E. Ferguson, is the duly elected and acting Auditor of the State of Ohio.

"6. That Section 117.01, Ohio Revised Code, created the Bureau of Inspection and Supervision of Public Offices in the office of Auditor of State. Section 117.01 makes the Auditor of State the Chief Inspector and Supervisor of Public Offices.

"7. That Section 117.09, Ohio Revised Code, mandates that the Bureau of Inspection and Supervision of Public Offices shall examine each public office, at least once every two years. The examination shall inquire into the methods, accuracy, and legality of the accounts, records, files, and reports of the office, whether the requirements of the Bureau have been complied with, and further, each examination shall cover the period beginning with the termination date of the period covered in the most recent audit.

"8. That commencing November 25, 1958, the Defendants assigned a State Examiner to audit the books and records of the Office of Clerk-Auditor. Audit reports were filed with the Defendants showing no discrepancies or funds which were unaccounted for. These reports were reviewed, approved and filed by these Defendants.

"9. For the audit period commencing June 1, 1972, to December 10, 1974, the Defendants assigned a new State Examiner to make this audit, the previous audits having been made by the same State Examiner, except for one early audit. The audit for the period June 1, 1972 to December 10, 1974 showed funds unaccounted for in the Clerk-Auditor's office in the amount of Two Hundred Forty Nine Thousand, One Hundred Fifty One and 07/100 Dollars ($249,151.07).

"10. The State Examiner's report was filed with the Toledo District Office, Bureau of Inspection and Supervision of Public Offices on June 12, 1975, and approved by that office on June 13, 1975. The report was then filed with the Bureau in Columbus, Ohio, on June 26, 1975, and approved the same date. On July 15, 1975, the report was officially placed on record with the Bureau and after that date a copy was served on the Solicitor of the Plaintiff City.

"11. Based on the findings of the State Examiner that Hildred Fox, Clerk-Auditor, was liable for the unaccountable funds, the Solicitor of the Plaintiff City filed a complaint in the Common Pleas Court of Lucas County, Ohio, and obtained judgment against her in cause No. 75-1569 in the amount of Two Hundred Forty Nine Thousand, One Hundred Fifty One and No/100 Dollars ($249,151.00), plus interest, which remains uncollected, and further, made demand on Auto Owner's Mutual Insurance Company for payment of the Clerk-Auditor's bond and payment was received in the amount of Five Thousand and no/100 ($5,000.00) Dollars.

"12. That the Defendants had full and sole control of the office of the Bureau of Inspection and Supervision of Public Offices including the selection and examiners in the field, the supervision and approval of the auditing methods used by the field examiner assigned to audit the office of Clerk-Auditor of Plaintiff City; that Defendants being in sole control failed to adopt procedures and/or methods of auditing which should have disclosed the shortage in the Clerk-Auditor's account at its inception so as to minimize the loss sustained by Plaintiff.

"13. The audit made and filed wih the Bureau that disclosed the shortage in the Clerk-Auditor's accounts, according to a statement contained on Page 163 of the Audit Report, was made in accordance with generally accepted auditing standards and accordingly included such tests of the accounting records and such other auditing procedures as were considered necessary in the circumstances.

"14. That the loss in the amount of Two Hundred Forty Four Thousand, One Hundred Fifty One and no/100 Dol-

lars ($244,151.00) sustained by Plaintiff was the direct and proximate cause of the negligence of Defendants and/or their Agents and Employees, in the manner in which the affairs of the Office of the Bureau of Inspection and Supervision of Public Offices were conducted; and further, in approving the prior audits which were inaccurate and misleading, all to the detriment of this Plaintiff; that had the Defendants followed the same procedure that was followed by the audit referred to in Paragraph 9 of the Complaint, that the discrepancy and the shortage would have been discovered at its inception.

"*SECOND CAUSE OF ACTION.*

"15. Plaintiff incorporates all the allegations contained in its First Cause of Action as if fully set forth herein, and further says that Defendants breached their statutory duties to this Plaintiff as set forth in Section 117.09, Ohio Revised Code, that it inquire into the accuracy and legality of the accounts, records, files and reports of the office. That the methods and procedures to be followed, and the capability of the employee hired in making the audit of the Plaintiff's Clerk-Auditor's office was solely under the control of the Defendants. That the loss sustained by Plaintiff was a direct and proximate result of the Defendant failing to carry out its mandatory duties as set forth in the statutes.

"*THIRD CAUSE OF ACTION.*

"Plaintiff incorporates all the allegations contained in its First and Second Causes of Action, as if fully set forth herein, and further says that Section 117.01, Ohio Revised Code, authorizes the Bureau of Inspection and Supervision of Public Offices to charge the taxing district for any and all audits that are authorized by Section 117.-09, Ohio Revised Code. That this Plaintiff has been charged, and has paid to the Bureau of Inspection and Supervision of Public Offices, the sum of Thirty Seven Thousand Five Hundred Seventy Five and 42/100 Dollars ($37,575.-42) representing the charges made by said Bureau for the audits through 1974. Plaintiff is entitled to be reimbursed in the amount paid for these audits for the rea-

son that they were not conducted in accordance with Section 117.09, Ohio Revised Code. * * *''

The Court of Claims granted defendants' motion to dismiss the complaint for a failure to state a claim upon which relief could be granted, and this appeal was taken.

Plaintiff's single assignment of error states:

"The Court of Claims erred in its decision in dismissing the complaint of the plaintiff-appellant on the grounds that it failed to state a claim upon which relief could be granted.''

Plaintiff contends that the cases relied upon by the Court of Claims, *Smith* v. *Wait* (1975), 46 Ohio App. 2d 281, and *Shelton* v. *Indus. Comm.* (1976), 51 Ohio App. 2d 125, are distinguishable from the case at hand, in that in *Smith* and *Shelton* the regulating agencies were created under the police powers of the state, and that statutory duties imposed by R. C. Chapter 1707 and Chapter 4121, were specifically directed to protect the people in general.

R. C. 117.01 reads, in part:

"This section creates the bureau of inspection and supervison of public offices, in the office of the auditor of state, which bureau shall inspect and supervise the accounts and reports of all state offices as provided in sections 117.01 to 117.19, inclusive of the Revised Code, including every state educational, benevolent, penal, and reformatory institution, public institution, and the offices of each taxing district or public institution in the state. * * *''

R. C. 117.02 provides for the hiring of examiners by the bureau; R. C. 117.03 authorizes the hiring of experts by the bureau in order to carry out its statutory duties.

R. C. 117.09 provides:

"The bureau of inspection and supervision of public offices shall examine each public office, department, or agency at least once every two years, except that the offices of judges of county courts shall be examined at such times as the bureau determines. On examination, inquiry shall be made into the methods, accuracy, and legality of the accounts, records, files, and reports of the office, whether the laws, ordinances, and orders pertaining to the of-

fice have been observed, and whether the requirements of the bureau have been complied with. Each examination shall cover the period beginning with the termination date of the period covered in the most recent audit.''

R. C. 117.10 provides, in part:

''The report of the examination made by the bureau of inspection and supervision of public offices shall set forth, in such detail as is deemed proper by the bureau, the result of the examination with respect to every matter inquired into. It shall be made and signed by the state examiner in charge of the examination or by a deputy inspector and supervisor, filed in the office of the bureau, and certified copies thereof filed in the office of the auditing department of the taxing district reported upon, and in the office of the attorney general, prosecuting attorney, city director of law, or mayor of a village as provided in this section. * * *''

R. C. 117.15 provides, in part:

''The total amount of compensation paid state examiners, their expenses, and the cost of typing reports shall be borne by the taxing districts to which such state examiners are so assigned by the chief inspector and supervisor or deputy inspectors and supervisors of public offices, except the annual vacation and sick leave of state examiners and typists shall be financed from the general revenue fund of the state through the biennial appropriations by the general assembly.''

In *Smith* v. *Wait, supra,* this court held that the state is not liable for the fraudulent registration of securities by its officers and employees, in violation of express statutory provisions. We stated therein that the state's waiver of its sovereign immunity from liability has not opened up the public coffers to all who may seek recompense but, rather, permits the liability of the state to be determined in accordance with the rules of law applicable to suits between private parties; such actions must be predicated upon previously recognized claims for relief, for which the state would have been liable except for sovereign immunity.

In *Shelton* v. *Indus. Comm.*, *supra,* we reiterated this principle in holding that there is no cause of action against the state in the Court of Claims for the negligent failure of a state agency to inspect places of business or boilers and to enforce safety standards. In that case we stated that the Court of Claims Act does not create *new* duties, it only provides a remedy for existing duties where the state was previously immune from suit and a private party under similar circumstances would have been liable. We further stated, at page 130:

"Construing that provision broadly, one could say that private parties who have a duty to inspect and to enforce safety standards are liable for their negligence in failing to do so and, hence, the state should be liable. Construing that provision more narrowly, one could say that a private party's duty to inspect and to enforce safety standards is not created by statute, but only by virtue of some other legal relationship and, hence, there is no rule of law making a private party liable for a failure to perform statutory duties of inspection and enforcement of safety standards which were enacted to protect the health, safety and welfare of all of the citizens of Ohio.

"The latter interpretation, in our opinion, is correct. Statutes requiring state agencies to inspect and enforce safety standards were enacted to protect the public generally against unsafe conditions. They were not intended, nor should they be so construed, to create a duty toward any particular person. Likewise their performance or nonperformance cannot be the basis of a tort action by an injured person."

Transforming those principles to the facts of this case, private parties who have a duty to audit, examine, inquire into the methods, accuracy and legality of the accounts, records, files and reports of offices, if indeed there be any private parties to have such duty, such duty is not created by statute but only by virtue of some other legal relationship; hence, there is no law making a private party liable for a failure to perform statutory duties enacted to protect the health, safety and welfare of all the citizens of

Ohio. The audit here was made for the public in general, although it is conceded that the city of Oregon would have the greatest interest in such audit. Likewise in *Shelton,* the inspection could be said to be made primarily on behalf of the person injured. We find that the facts of this case cannot be distinguished from those in *Smith* and *Shelton* and that the same principles apply. We would reiterate that if the general assembly disagrees with the judicial interpretation of the actual language used there is nothing to prevent it from making clear and unequivocal the intent to abolish immunity in any respect desired; but that the actual language used, when not clear, should be construed reasonably to at least make sure that before the public treasury is emptied the result was intended by the legislature. Plaintiff's single assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

REILLY, J., concurs.
WHITESIDE, J., dissents.

WHITESIDE, J., dissenting. Being unable to concur in the conclusions of my colleagues, I must respectfully dissent.

Plaintiff in its complaint alleges to the effect that defendants, as state examiners, negligently performed their statutory duties with respect to audit periods prior to June 1, 1972, which if properly made would have revealed defalcations on the part of defendants' clerk-auditor. The complaint further alleges that, as a result of this negligence, further defalcations on the part of plaintiff's clerk-auditor occurred, resulting in a shortage of funds in the amount of $249,151.07 and a loss of some $244,151.00, the difference having been recovered.

Although R. C. 733.12 places a responsibility upon a city auditor to examine the accounts of every department of the city annually, the officer herein involved was the auditor, and his accounts are audited only by the state examiner pursuant to R. C. 117.09, which provides:

"The bureau of inspection and supervision of public offices shall examine each public office * * * at least once every two years * * *. On examination, inquiry shall be made into the methods, accuracy, and legality of the accounts, records, files, and reports of the office, whether the laws, ordinances, and orders pertaining to the office have been observed, and whether the requirements of the bureau have been complied with. * * *"

Pursuant to that statute, the Bureau of Inspection and Supervision of Public Offices performs the same functions as would a public accountant engaged to audit the accounts of a public officer. The liability of a private accountant so engaged for a failure to discover a defalcation by employees is well stated in 1 American Jurisprudence 2d 366, Accountants, Section 17, as follows:

"An accountant is not an insurer of the effectiveness of his audit to discover the defalcations or frauds of employees but he may be found liable for fraudulent or negligent failure to discover such defalcations because of lack of compliance with proper accounting procedure and accepted accounting practices or by his contract in the light of the circumstances of the particular case. Liability for negligence is limited, however, to such losses as were the proximate result of the accountant's breach of duty, and the employer may be precluded from recovery because of his own negligence when it has contributed to the accountant's failure to perform his contract and to report the truth."

See also Annotation, 54 A. L. R. 2d 324.

In waiving the state's immunity from liability R. C. 2743.02 provides that that liability shall be determined "in accordance with the same rules of law applicable to suits between private parties." Had a private accountant, rather than the Bureau of Inspection and Supervision of Public Officers, performed the audits in question, plaintiff's complaint would state a claim for relief.

Defendants rely upon prior decisions of this court, such as *Smith* v. *Wait* (1975), 46 Ohio App. 2d 281, and *Shelton* v. *Indus. Comm.* (1976), 51 Ohio App. 2d 125, in support of

their contention that plaintiff's complaint does not state a claim for relief. Each of these cases, however, turned upon the issue of whether or not the state owed a duty to the particular claimants which it breached. In *Shelton*, Judge McCormac stated at page 130:

"The crucial language to be interpreted is liability in accordance with the same rules of law applicable to suits between private parties. Private parties are not liable for injuries to another based on negligence unless they have breached a duty owed to that person. *Stamper* v. *Parr-Ruckman Motor Sales* (1971), 25 Ohio St. 2d 1. Since the requirement of a duty owed to plaintiff is one of the rules of law applicable to suits between private parties, it is also applicable to suits against the state. The Court of Claims Act does not create *new* duties, it only provides a remedy for existing duties where the state was previously immune from suit and a private party under similar circumstances would have been liable."

He went on to state, at page 131:

"Statutes requiring state agencies to inspect and enforce safety standards were enacted to protect the public generally against unsafe conditions. They were not intended, nor should they be so construed, to create a duty toward any particular person."

Similarly, in *Smith*, this court stated at page 286:

"Registration of securities by the state in no way makes the state an insurer or guarantor of the securities so registered, nor does registration constitute a warranty of the securities in any respect. Likewise, registration by the state does not constitute a representation to the public at large, much less to a trustee of the issuer of the securities, that the securities are safe to buy, are good investments, or are not fraudulently issued. No one has any right to rely upon the state's registration of securities as an indication that there is no fraud connected with their issuance."

In a companion case to *Smith*, this court in *Devoe* v. *State* (1975), 48 Ohio App. 2d 311, pointed out that R. C. 1707.40 specifically provides that the laws pertaining to the

registration of securites create no new civil liabilities, and we amplified the statement in *Devoe,* at page 318, stating:

"Although the state attempts to protect the general public, qualifications of the securities by registration with the division of securities does not constitute a representation by the state to the general public that the securities are safe to buy."

This case, however, is distinguishable from *Smith, Devoe,* and *Shelton.* Where the state undertakes to provide a service to someone, and negligently performs that service, the state is liable upon the same basis as a private person undertaking to perform the same type of service. The fact that the decision to provide the service is made by statute does not limit the state's responsibility, inasmuch as any service performed by the state necessarily must be mandated, or at least authorized, by statute. This case involves one who is a direct beneficiary of the services—one for whom the service itself is performed— unlike *Smith, Devoe,* and *Shelton,* which involved claims of third parties, not direct beneficiaries of a service provided by the state. Even a private accountant performing similar services would not be liable to third parties in the absence of fraud or privity. See *Beardeley* v. *Ernst* (1934), 47 Ohio App. 241, and Annotation, 46 A. L. R. 3d 979.

As we have previously held, liability of the state must be based upon a breach of duty owed by the state to the claimant. Such a duty may arise pursuant to the common law or pursuant to statute or a combination thereof. Although the relationship between plaintiff and a private accountant who might be employed to perform the same services would be predicated upon contract, the relationship between plaintiff and the Bureau of Inspection is mandated by statute. The fact that the relationship is mandated by statute, rather than by contract, does not change the nature of the relationship, nor require the exercise of any less care on the part of defendants in performing the services for plaintiff as mandated by statute.

Here, plaintiff alleges that nearly a quarter of a million dollars of public money has been lost due to the neg-

ligence of defendants. Although liability must be clear before monies should be taken from the public treasury, here the public treasury has been depleted to the extent of a quarter of a million dollars, albeit the public treasury of plaintiff, rather than that of the state. The issue herein is not whether or not the public treasury will be emptied but, rather, which public treasury should bear the loss. This can only be determined by a trial upon the merits. However, plaintiff states a claim for relief and is entitled to an opportunity to prove that the loss should be borne by the state, rather than plaintiff, because of the alleged negligence on the part of defendants in performing their statutory duties.

The primary purpose of R. C. Chapter 117 is to discover misapplications of public funds by public officers and to permit the public treasury depleted by such misapplication to be made whole. See R. C. 117.10 and 117.13. The complaint herein alleges to the effect that plaintiff's public treasury has been depleted but cannot be made whole because of the negligence of defendants in prior audits, which if properly conducted would have avoided the depletion of plaintiff's public treasury. This constitutes a claim for relief within the contemplation of R. C. 2743.02(A).

Defendants have raised no other basis upon which it could be found that plaintiff's complaint does not set forth a claim for relief, and, accordingly, for the reasons set forth above, it should be concluded that the complaint does set forth a claim for relief for which a suit against the state is permitted by R. C. 2743.02(A).

Accordingly, I would sustain the assignment of error, reverse the judgment of the Court of Claims and remand this cause to that court for further proceedings in accordance with law.