AVON LAKE CITY SCHOOL DISTRICT, APPELLANT, *v.* LIMBACH, TAX COMMR., ET AL., APPELLEES.

FORT FRYE LOCAL SCHOOL DISTRICT, APPELLANT, *v.* LIMBACH, TAX COMMR., ET AL., APPELLEES.

[Cite as Avon Lake City School Dist. *v.* Limbach (1988), 35 Ohio St. 3d 118.]

(Nos. 86-1117 and 86-2038—Decided February 10, 1988.)

*Baker & Hostetler, Joseph J. Van Heyde II, Edward J. Bernert, Richard W. Siehl* and *Dan Hale,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *James C. Sauer,* for appellee Tax Commissioner.

*Squire, Sanders & Dempsey, William H. Lutz, Jr., Thomas E. Palmer* and *Jennifer L. O'Connor,* for appellee Cleveland Electric Illuminating Co.

*Earl Goldhammer* and *Michael R. Luis,* for appellee Ohio Power Co.

*Per Curiam.* Appellants present two propositions of law. In the first, appellants contend that R.C. 5717.02 confers jurisdiction upon the BTA to hear a school district's appeal from the valuation of personal property, and apportionment of the taxable value thereof, of a utility company. Second, appellants argue that the dismissals by the BTA deprive them of their right to due process of law under the Ohio and federal Constitutions. Appellees respond that the BTA's decisions were correct concerning standing, and that a school board is not protected by the constitutional provisions which it asserts.

A litigant has no inherent right to appeal a tax determination, only a statutory right. *Cooke* v. *Kinney* (1981), 65 Ohio St. 2d 7, 19 O.O. 3d 154, 417 N.E. 2d 106. In *Campanella* v. *Lindley* (1981), 67 Ohio St. 2d 290, 21 O.O. 3d 182, 423 N.E. 2d 472, and *Hatchadorian* v. *Lindley* (1983), 3 Ohio St. 3d 19, 3 OBR 409, 445 N.E. 2d 659, we held that a county auditor may appeal the apportionment and assessment of value made by the commissioner because the auditor is described as a member of a class mentioned in R.C. 5717.02 who is authorized to appeal. Appellants also claim to be described as members of a class who are authorized to appeal under that section. R.C. 5717.02, in pertinent part, provides:

"* * * [A]ppeals from final determinations by the tax commissioner of any preliminary, amended, or final tax assessments, reassessments, valuations, determinations, findings, computations, or orders made by the commissioner may be taken to the board of tax appeals by the taxpayer, *by the person to whom notice of the tax assessment, reassessment, valuation, determination, finding, computation, or order by the commissioner is required by law to be given,* by the director of budget and management if the revenues affected by such decision would accrue primarily to the state treasury, or by the county auditors of the counties to the undivided general tax funds of which the revenues affected by such decision would primarily accrue. * * *" (Emphasis added.)

Appellants maintain that they are members of that class of persons who are entitled to receive notice of the valuation and apportionment. They argue that R.C. 5727.23 provides them with the requisite notice, entitling them to appeal the commissioner's determination. This section states:

"On or before the first Monday in October, the tax commissioner shall certify to the county auditor the value of taxable property apportioned to each taxing district in his county, as determined under sections 5727.13 and 5727.15 of the Revised Code.

"The county auditor shall place the apportioned valuation and assessments on the proper tax lists and duplicates, and taxes shall be levied and collected thereon at the same rates and in the same manner as taxes are levied and collected on real property in the taxing district in question."

This section does not require that appellants receive notice of the apportioned values and assessments. They may receive notice by reviewing the tax lists and duplicates, and, in all likelihood, are advised of this information by the county auditor. The statute, however, does not require that they receive notice. Since appellants are not required to be notified by law of the final determination of the commissioner, they are not within that class of persons authorized to appeal her determinations.

Appellants also argue that R.C. 5727.10, the statute which provides for a preliminary review by the commissioner of the report filed by the public utility, refers to a school district because, under the terms of the statute, "* * * the commissioner may, on the application of a public utility or any person interested therein, or on his own motion, correct the assessment of the property of the public utility." Appellants maintain that they are "any person interested therein" and may apply for the correction of the assessment.

We construe "any person interested therein" to mean a person interested in the public utility, such as an owner thereof, and not to mean a person interested in the assessment.[2]

Appellants also argue that the language in R.C. 5717.02, authorizing appeal by those persons to whom notice of the tax assessment is required by law to be given, would be rendered surplusage by the conclusion which we have reached. This argument fails to recognize that the entire section is general and relates to more than the public utility tax. For example, R.C. 5747.13 provides for the filing of a petition for reassessment by the person assessed in an income tax related assessment, and the statute refers to notice of assessment being served upon that person who could be the taxpayer or the employer. Someone other than a taxpayer is, then, permitted to file for reassessment as the employer is a person to whom notice of assessment is required by law to be given.

In their second proposition of law, appellants argue that if the final determination of the commissioner is not appealable by a school district, then such statutory scheme denies a school district its right to due course of law provided by Section 16, Article I of the Ohio Constitution and procedural due process protected by the Fourteenth Amendment to the United States Constitution.[3] Appellees, Tax Commissioner and Cleveland Electric Illumi-

---

[2] It might also be questioned whether a school board is a "person" as defined in R.C. 5701.01 and capable of performing an act, unless it has been granted specific

statutory authority to do so. See *Thaxton* v. *Medina City Bd. of Edn.* (1986), 21 Ohio St. 3d 56, 21 OBR 357, 488 N.E. 2d 136.

[3] The due course of law protection pro-

nating Company, argue that appellants, school districts, are not "persons" who enjoy the asserted constitutional guarantees.

*Ross* v. *Adams Mills Rural School Dist.* (1925), 113 Ohio St. 466, 149 N.E. 634, involved the creation of a new school district and the transfer of territory, including the taxable base, and the apportionment of indebtedness of the school districts. The court was presented with the question of whether a school district's constitutional guarantee of the equal protection of the law was violated. The court cited *Hunter* v. *Pittsburgh* (1907), 207 U.S. 161. The *Hunter* court, at 178-179, stated:

"* * * Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property. The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. * * *"

The *Ross* court, *supra,* at 480, 149 N.E. at 638, cited with approval *State, ex rel. Bilby,* v. *Brooks* (Mo. 1923), 249 S.W. 73, for the following proposition:

"* * * It was there held that school districts and their property are creatures of the state which may be created and abolished at will by the Legislature. Hence that no provision of the Constitution was violated in providing for consolidation of school districts, even when applied to a district which had a surplus in its treasury which was transferred to the consolidated district."

The *Ross* court held that the action in transferring the property and territory of the school district and the apportionment of the indebtedness was valid.

A search of Ohio cases has not located any other case dealing with this question, and neither party cites any such case. We have, however, reviewed *South Macomb Disposal Auth.* v. *Twp. of Washington* (C.A. 6, 1986), 790 F. 2d 500, and *Delta Special School Dist. No. 5* v. *State Bd. of Edn.* (C.A. 8, 1984), 745 F. 2d 532. Both cases conclude that a political subdivision may not invoke the protection provided by the Constitution against its own state

---

vided by Section 16, Article I of the Ohio Constitution and the due process protection provided by the Fourteenth Amendment to the United States Constitution are considered to be parallel in meaning. *Columbus* v. *New* (1982), 1 Ohio St. 3d 221, 1 OBR 244, 438 N.E. 2d 1155.

and is prevented from attacking the constitutionality of state legislation on the grounds that its own rights had been impaired. While there may be occasions where a political subdivision may challenge the constitutionality of state legislation, it is not entitled to rely upon the protections of the Fourteenth Amendment. A political subdivision, such as a school district, receives no protection from the Equal Protection or Due Process Clauses vis-a-vis its creating state. The *South Macomb* court even dismissed as largely being abandoned the distinction between a municipal corporation acting in a governmental capacity and one acting in a proprietary capacity.

We are persuaded that a school district is a political subdivision created by the General Assembly and it may not assert any constitutional protections regarding due course of law or due process of law against the state, its creator. Not having this protection, it may not now assert these protections against the state by asking this court to declare the statute unconstitutional for these reasons.[4]

Accordingly, the decisions of the BTA to dismiss the appeals filed by appellants are hereby affirmed.

*Decisions affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

LOCHER, J., concurs in judgment only.

LOCHER, J., concurring in judgment only. I concur separately to express my concern about a problem highlighted by this case and to invite the legislature to do something about it.

Because school district revenues are directly dependent on the valuation and apportionment of the taxable value of the personal property of public utilities, school districts have a very great interest in these determinations by the Tax Commissioner. However, school districts currently have neither the legal right to be provided with notice of public utility tax assessments nor a direct means of challenging an erroneous determination of valuation or apportionment.

The only way a school district can contest an erroneous determination by the Tax Commissioner is through the district's county auditor, who is required by law to be provided with notice of the determination under R.C. 5727.23, and who is consequently authorized to appeal the determination under R.C. 5717.02.[5] The problem is that the county auditor may, for various reasons, refuse to appeal the determination. The county auditor may not be interested in appealing an erroneous determination where the error involves the allocation of revenue between the taxing districts within the

---

[4] Appellee Cleveland Electric Illuminating Company also asserts that appellant Avon Lake City School District has waived its constitutional claim by not raising it before the Board of Tax Appeals, citing *Bd. of Edn. of South-Western City Schools* v. *Kinney* (1986), 24 Ohio St. 3d 184, 24 OBR 414, 494 N.E. 2d 1109. We do not need to respond to this argument. Since we find that appellant had no constitutional claim to assert, it had no constitutional claim to waive.

[5] In fact, school districts were probably omitted from the category of persons to be provided with notice of the Tax Commissioner's determinations on the theory that county auditors would adequately protect the interests of their school boards. Cf. *State, ex rel. Brentwood School Dist.,* v. *State Tax Comm.* (Mo. 1979), 589 S.W. 2d 613, 614.

county itself. Also, an error of modest proportions, which the county auditor may not consider significant enough to appeal, could spell financial disaster for an affected school district. As appellants point out:

" The county auditor, as the fiscal officer of the county, may have an interest on behalf of the county general revenue fund. In terms of revenue impact, however, the effect on the school district likely will be many times the effect upon the county general revenue fund because of the greater rate of millage (tax rate) applicable to the school district relative to the county millage."

In this type of case, county auditors would not adequately represent the interest of the school districts; yet, at present the only avenue of appeal available to school districts lies through county auditors. Consequently, I urge the legislature to remedy this problem by providing that school districts, which clearly have a great stake in these matters, must be provided with notice of the Tax Commissioner's determinations of valuation and apportionment. School districts would then be authorized by R.C. 5717.02 to contest incorrect public utility tax assessments without having to rely exclusively on county auditors.