Avon Lake City School District et al., Appellants, *v.* Ohio Department of Taxation, Appellee.

(No. 89AP-100—Decided November 28, 1989.)

*Baker & Hostetler, Richard W. Siehl, Bettina C. Altizer* and *Jane Arata,* for appellants.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Simon B. Karas,* for appellee.

McCormac, P.J. Appellants, Avon Lake City School District Board of Education et al., filed a complaint in the Ohio Court of Claims against appellee, Ohio Department of Taxation. The amended complaint alleged that appellee was guilty of conversion, concealment, and breach of fiduciary duties.

The Court of Claims granted appellee's motion for judgment on the pleadings based upon its conclusion that appellee had breached no duty to appellants for which the law provided a remedy.

Appellants have appealed the decision and raise the following assignment of error:

"The school districts have standing to sue the department in the Court of Claims, and the Court of Claims improperly granted the department's second motion for judgment on the pleadings.

"A. Plaintiffs-Appellants have standing in the Court of Claims to bring this action pursuant to the statutes creating and controlling the Court of Claims.

"B. The Court of Claims erred in granting the Department's second motion for judgment on the pleadings."

An informally promulgated policy of the tax commissioner formed the basis of appellants' complaint. Specifically, from 1969 to 1985, the tax commissioner informally instructed electric companies to report the value of their situsable (having a fixed location) personal property at seventy percent of its true taxable value and to report the remaining thirty percent as part of the total non-situsable personal property value. This practice allegedly deprived certain school districts of a dollar-for-dollar apportionment of tax attributable to property within their boundaries and distorted the computation used to apportion non-situsable property values. The tax commissioner would apportion the thirty percent situsable value and one hundred percent of the non-situsable value to other taxing districts based upon the relationship between the cost of transmission and distribution lines in that taxing district to the cost of transmission and distribution lines of that electric company in the entire state.

In *Condee* v. *Lindley* (1984), 12

Ohio St. 3d 90, 12 OBR 79, 465 N.E. 2d 450, the Ohio Supreme Court affirmed a decision of the Board of Tax Appeals ("BTA") that, because the seventy-thirty formula had not been promulgated properly as a formal rule pursuant to R.C. Chapter 119 rule-making requirements, it was arbitrary, unreasonable and, therefore, invalid. The Ohio Supreme Court noted that R.C. Chapter 119 requirements were designed to permit a full and fair analysis of the impact and validity of proposed rules. *Id.* at 93, 12 OBR at 82, 465 N.E. 2d at 452. In *Condee,* appellant had argued that its policy met the statutory apportionment requirement set forth in R.C. 5727.15(B). While the Ohio Supreme Court acknowledged that the contested policy arguably met the requirements of R.C. 5727.15(B), it went on to observe that this was not the dispositive question. The dispositive question was whether this policy was a rule which had not been adopted in accordance with the requirements of R.C. Chapter 119.

Subsequent to the *Condee* decision, the Ohio Supreme Court affirmed a BTA ruling that school districts have no right to appeal a valuation determination made by the tax commissioner to the BTA pursuant to R.C. 5717.02. *Avon Lake City School Dist.* v. *Limbach* (1988), 35 Ohio St. 3d 118, 518 N.E. 2d 1190.

For purposes of this appeal, the factual allegations of the complaint are taken to be true. *Metzger* v. *Supt. of Bldg. and Loan Assns.* (1986), 31 Ohio App. 3d 212, 213, 31 OBR 482, 483, 510 N.E. 2d 404, 405.

While both parties to this action have couched the issue in terms of standing, the underlying issue is whether appellants have a claim for relief. If they have a claim for relief, then they would have standing in the Court of Claims. That is to say, while this court will accept appellants' allegations that appellee caused them financial harm, we must determine whether a legal remedy exists. See *State, ex rel. Wilson,* v. *Preston* (1962), 173 Ohio St. 203, 19 O.O. 2d 11, 181 N.E. 2d 31 ("A cause of action is that set of facts which establish or give rise to a right of action, the existence of which affords a party the right to judicial relief." *Id.* at paragraph two of the syllabus).

The effect of the enactment of the Court of Claims Act was to allow the state to be sued in instances previously prohibited by the principle of sovereign immunity. The Court of Claims Act does not authorize the state to be sued for its legislative or judicial functions, or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion. *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776, paragraph one of the syllabus.

It is a basic tenet of tort law that, in order to have a cause of action sounding in tort against a defendant, the plaintiff must establish that the defendant owes a legal duty to the plaintiff to conform to a specified standard of conduct, that the defendant failed to conform to the standard of conduct, that this failure proximately caused injury to the plaintiff, and that the plaintiff suffered an actual loss or damage. Prosser & Keeton, Law of Torts (5 Ed. 1984) 164-165, Section 30.

Appellants have alleged that they sustained injuries as a result of appellee's tortious conduct. Appellants' amended complaint and appellants' brief identify the alleged tortious conduct. Appellants allege that appellee's policy of classifying public utility personal property as situsable or non-situsable and of employing a seventy-thirty formula when valuing said property was not done in accordance with R.C. Chapter 119.

R.C. 119.02 provides:

"Every agency authorized by law to adopt, amend, or rescind rules shall comply with the procedure prescribed in sections 119.01 to 119.13, inclusive, of the Revised Code, for the adoption, amendment, or rescission of rules. Unless otherwise specifically provided by law, the failure of any agency to comply with such procedure shall invalidate any rule or amendment adopted, or the rescission of any rule."

The purpose of the rule-making requirement contained in R.C. Chapter 119 is "to permit a full and fair analysis of the impact and validity of a proposed rule. * * *" *Condee, supra,* at 93, 12 OBR at 82, 465 N.E. 2d at 452.

R.C. Chapter 119 establishes no duty on the part of appellee toward appellants. Consequently, in failing to promulgate the seventy-thirty formula pursuant to R.C. Chapter 119, appellee breached no duty to appellants and appellants cannot state a claim for relief against appellee based upon this action.

Appellants allege that they rightfully relied upon the certification of values, that appellee intentionally concealed both the unlawful method of allocating the value of the property and the full and true value of the property, and that the improper methods and the concealment damaged appellants.

The Ohio Constitution permits taxes to be levied only for public purposes. *Lucas Cty.* v. *State, ex rel. Boyles* (1906), 75 Ohio St. 114, 134, 78 N.E. 955, 958.

R.C. 5705.05 provides that the purpose of a general levy is "* * * to provide one general operating fund derived from taxation from which any expenditures for current expenses of any kind may be made * * *." R.C. 5705.05(F) also provides that current expenses include the amounts necessary for tuition, the state teachers' retirement system, and the maintenance, operation, and repair of schools.

R.C. 5705.10 provides that all revenue derived from general levies shall go into the general fund and that all revenue derived from special levies shall be credited to a special fund for the purpose for which the levy was made.

R.C. 5727.10 states that it is the tax commissioner's responsibility to ascertain and to assess all taxable property of public utilities at its true value in money. R.C. 5727.10 also provides that, in determining the true value of the property, "* * * the commissioner shall be guided by the information contained in the report filed by the public utility and such other evidence and rules as will enable him to arrive at the true value. * * *" This section also provides that the commissioner may correct the assessment he has made upon his own motion or "* * * on the application of a public utility or any person interested therein * * *."

R.C. 5727.15(B) sets forth the method of apportioning the assessed value of public utility personal property when the utility is located in more than one county in the state. It provided, in part, as follows:

"* * * [T]he assessed value of such property * * * shall be apportioned by the commissioner between the several counties and the taxing districts therein in the proportion which the property located in such county and taxing district bears to the entire value of the property of such public utility * * * so that to each county and each taxing district therein there shall be apportioned such part of the entire valuation as will fairly equalize the relative value of the property therein located to the whole value of the property. * * *" 138 Ohio Laws, Part I, 1780, 1787.

R.C. 5727.23 instructs the tax commissioner to certify to the county auditor the value of taxable property

apportioned to each taxing district in his county as determined under R.C. 5727.13 and 5727.15.

The laws pertaining to the valuation and allocation of public utility personal property create no duty on the part of the tax commissioner toward the school districts. The taxes assessed upon the public utility property are for the general fund which, while it will help fund the schools, provides no explicit right or interest in the schools to an express portion of the general fund. Additionally, the commissioner is required to certify the value of the property only to the county auditor; there is no mention of any duty on the part of the commissioner to certify the value to appellants.

In *Oregon* v. *Ferguson* (1978), 57 Ohio App. 2d 95, 11 O.O. 3d 94, 385 N.E. 2d 1084, this court addressed the issue of whether a statute creating a duty to protect the public in general also created a duty towards a particular person. In *Oregon,* we concluded that such a statute was not intended nor should it be construed to create a duty towards a particular person. In making this determination, the court acknowledged that, while the party seeking relief had the greatest interest in the matter, the purpose of the statute was still for the public in general. *Id.* at 102, 11 O.O. 3d at 98, 385 N.E. 2d at 1088. Analogously, in the present situation, while the schools receive a large portion of the taxes derived from the public utility property, taxes are assessed for the public in general. Appellants have failed to establish a claim for relief on the ground that appellee did not inform them of its valuation and allocation method.

Appellants allege that appellee has a duty to assess, to value, to apportion, and to distribute the taxable value of electric company personal property in appellants' taxing districts in the manner prescribed by R.C. Title 57. Appellants characterize this as an agency relationship which created fiduciary obligations on the part of appellee to act in good faith. Appellants allege that appellee breached its fiduciary duties and thereby damaged appellants.

The party who asserts the existence of an agency relationship bears the burden of proof. *Gardner Plumbing, Inc.* v. *Cottrill* (1975), 44 Ohio St. 2d 111, 73 O.O. 2d 390, 338 N.E. 2d 757. A principal-agent relationship exists when one party exercises the right of control over the actions of another and when those actions are directed to the attainment of an objective which the former seeks. *Hanson* v. *Kynast* (1986), 24 Ohio St. 3d 171, 24 OBR 403, 494 N.E. 2d 1091.

Appellants have failed to show how appellee's duties to assess, to value, and to apportion property pursuant to R.C. Title 57 establish an agency relationship between appellants and appellee. Appellants have failed to state a claim for relief based upon an agency relationship and a breach of fiduciary duties.

Finally, appellants allege that appellee failed to uniformly implement the decision from *Condee* and that this constituted a breach of duty to appellants. *Condee* was an action brought by a county auditor against the tax commissioner on behalf of the auditor's county. The Ohio Supreme Court held that the department of taxation could not employ the seventy-thirty formula without formally promulgating it pursuant to R.C. Chapter 119. This holding created no duty on the part of appellee toward appellants in this case. The duty of appellee to value personal property of public utilities remains a general duty. Appellants have failed to state a claim for relief upon the grounds that appellee did not uniformly implement the holding of the *Condee* decision.

Additionally, while appellants structure their complaint filed with the Court of Claims in language alleging tortious conduct, it was basically a tax complaint giving rise to remedies for improper taxation and not tort relief.

In determining which parties have the right to protest the tax commissioner's valuation of taxable property within the confines of R.C. Title 57 and the BTA, the legislature had not seen fit to grant that remedy to the school districts. The absence of a duty on the part of the tax commissioner towards the school districts concerning its valuation of public utility personal property is a logical and consistent result. If the legislature had not seen fit to permit the school districts to contest such decisions in the specially created BTA, certainly it did not intend for the school districts to be able to bring essentially the same complaint for the same or similar damages in the Court of Claims by labeling it a tort action.

Appellants' assignment of error is overruled. The judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, J., concurs.

WHITESIDE, J., concurs separately.

WHITESIDE, J., concurring separately. Although I concur in the result reached in the majority opinion, I do not concur in the entirety of the opinion since I find some of the language is overbroad and the opinion does not appear to address the underlying issue raised by appellants.

This is not simply an ordinary tort claim predicated upon breach of a general statutory duty. Rather, the appellants, in their amended complaint, raise three claims for relief: the first seeks damages for unlawful conduct of appellee which appellants characterize as a claim for conversion; the second is for damages allegedly resulting from intentional concealment of the true state of facts as to taxable value of electric companies which appellants characterize as concealment of the unlawful conduct; and the third is for an alleged breach of fiduciary obligations arising from an alleged agency relationship between the parties which appellants characterize simply as breach of duty.

I concur in the majority finding that this case does not present a standing issue, which means that if appellants stated a claim for relief, they have standing to maintain that action in the Court of Claims. However, any error on the part of the trial court in mischaracterizing the issue as one of standing is not prejudicial, since appellants are not prejudiced by the dismissal if they have not stated a claim for relief in their amended complaint.

At the outset, it is established that appellee engaged in unlawful conduct adopting an unauthorized and unlawful formula for determining the taxable value of "non-situsable" public utility property located in each of appellants' school districts which resulted in each of appellants receiving less revenue from the tax imposed upon public utility property than it would have received had the "non-situsable" property been properly valued for tax purposes. See *Condee* v. *Lindley* (1984), 12 Ohio St. 3d 90, 12 OBR 79, 465 N.E. 2d 450. The Supreme Court has also held, however, that appellants' boards of education have no right of appeal from the tax commissioner's determination certifying valuation of tangible personal property, including the public utility property. *Avon Lake City School Dist.* v. *Limbach* (1988), 35 Ohio St. 3d 118, 518 N.E. 2d 1190.

The majority opinion states that "* * * appellee breached no duty to appellants * * *" and that "[t]he laws pertaining to the valuation and allocation of public utility personal property create no duty on the part of the tax commissioner toward the school districts. * * *" Such statements are overbroad and are not necessary in the majority opinion even to justify the theory that the case turns upon the existence of a duty in the tort sense. As the majority notes, a duty in the tort sense is a duty to conform to a specific standard of conduct. Here, there was a specific duty upon the agency involved, the tax commissioner, to determine the value of public utility personal property in a certain manner, which duty the Supreme Court held in *Condee, supra,* was not properly fulfilled. In *Avon Lake,* the Supreme Court found not that the tax commissioner owed no duty to appellants but, instead, that the pertinent statute involved, R.C. 5717.02, confers no right of appeal upon appellants from the determination by the tax commissioner upon the public utility tax assessments made by the tax commissioner solely because neither a school district nor a school board is a "person interested" within the contemplation of R.C. 5717.02, stating at 120, 518 N.E. 2d at 1192, "[w]e construe 'any person interested therein' to mean a person interested in the public utility, such as an owner thereof, and not to mean a person interested in the assessment." Although the Supreme Court queried as to whether a school board is a person within the contemplation of the definition of R.C. 5701.01, the court nevertheless recognized that a school board has an interest in the public utility tax assessments made by the tax commissioner.

R.C. 5727.23 makes it quite clear that the "assessment" by the tax commissioner is of the value of property, not of the amount of taxes to be col-lected. Rather, the taxes which are levied upon the property are the rates levied and collected on real property in the taxing district. Thus, the taxes are those levied by the local district through its school board either by the board or by a vote of the electorate and essentially are the same as any real estate tax levy inuring to the benefit of the school district and school board. Thus, there is a "duty" of the tax commissioner to make an annual certification to the county auditor so that the tax levies of the various school districts, as well as other taxing units, can be levied upon the public utility property and collected so as to inure to the benefit of the school district. Essentially, what appellants contend is that the certification was of the wrong amount and, accordingly, their levies produced less revenue than they should have, had the right valuation been certified.

Even though there is a duty, it does not necessarily follow that appellants have a claim in tort. Obviously, under the statute involved, the determination of the assessments by the tax commissioner involves the exercise of a high degree of official judgment or discretion, the type of exercise of executive or administrative function for which R.C. 2743.02 does not impose liability under the rule of *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68, 14 OBR 506, 471 N.E. 2d 776. Accordingly, regardless of the various allegations of appellants, they have not stated a claim for relief cognizable in the Court of Claims pursuant to R.C. 2743.02, which provides that the state's liability shall be determined in accordance with the same rules of law applicable to suits between private parties.

As to the agency issue, I generally concur in the reasoning in the majority opinion that, as a matter of law, there is no agency relationship between appellants and the tax commissioner.

Such agency relationship appears to be the foundation for appellants' claims. As to the claim for concealment, it is nothing more than another means of asserting the claim predicated upon error of judgment. To the extent that the alleged concealment is predicated upon the failure of the tax commissioner to comply with the various requirements of R.C. Chapter 119, including the publication requirements, there is no claim for relief. To the extent that the undervaluation is a result solely of a failure to publish a rule, appellants have sustained no damage. Had the rule been properly promulgated and published, appellants would have received no more than they received by application of the rule without its being properly promulgated and published. There simply is no "injury" to appellants as a result of noncompliance with R.C. Chapter 119 but, instead, appellants seek a "windfall" which they would not have enjoyed had R.C. Chapter 119 been strictly complied with. Thus, noncompliance with R.C. Chapter 119 affords no basis for relief to appellants.

For these reasons, I concur in the majority conclusion that appellants have not stated a claim for relief against the state predicated upon misconduct of the tax commissioner in assessing and evaluating public utility property. Accordingly, I concur in the judgment.