ASHLAND COUNTY BOARD OF COMMISSIONERS ET AL., APPELLANTS,
*v.* OHIO DEPARTMENT OF TAXATION, APPELLEE.

[Cite as *Ashland Cty. Bd. of Commrs. v. Ohio Dept. of Taxation* (1992), 63 Ohio St.3d 648.]

(No. 91–720—Submitted February 18, 1992—Decided May 20, 1992.)

650

*Berry & Shoemaker, Kevin L. Shoemaker* and *D. Lewis Clark, Jr.*, for appellants.

*Lee I. Fisher*, Attorney General, and *Michael W. Gleespen*, for appellee.

HOLMES, J.   The key issue in this case is whether the Court of Claims has subject-matter jurisdiction over the claims brought by appellants.   For the reasons that follow, we answer such query in the negative and affirm the judgment of the court of appeals.

In the present case appellants have complained of the manner in which appellee has assessed, valued and apportioned the value of public utility personal property for Columbia Gas for the tax years 1983 through 1988. This, in essence, is a case involving the review of a tax determination—a tax case.   Even though appellants couch their challenge in terms of separate tort claims for fraud and fraudulent concealment, their true nature is one of a dispute over an administrative tax determination.

As a threshold, we note that jurisdiction of the Court of Claims is governed by R.C. 2743.02, which in pertinent part provides:

"(A)(1) The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter * * *, and except as provided in division (A)(2) of this section.   * * * "

In 1975, the state waived its immunity within the limits provided in R.C. 2743.02.   This waiver of immunity is limited to those causes of action that existed prior to the enactment of the Court of Claims Act and which were barred by the doctrine of sovereign immunity.   See *McCord v. Dept. of Natural Resources* (1978), 54 Ohio St.2d 72, 8 O.O.3d 77, 375 N.E.2d 50. Therefore, if the state had consented to be sued on a cause of action prior to the enactment of the Court of Claims Act, then the Court of Claims does not

have jurisdiction over the claim, since the waiver of immunity did not include those claims.

Prior to the existence of the Court of Claims, the state consented to suits regarding the assessment, valuation and apportionment of property before the Board of Tax Appeals. R.C. 5703.02 states that the BTA is given jurisdiction to exercise the following powers and perform the following duties:

"(A) Exercise the authority provided by law to hear and determine all appeals of questions of law and fact arising under the tax laws of this state in appeals from decisions, orders, determinations, or actions of any tax administrative agency established by the law of this state, including but not limited to appeals from:

"* * *

"(3) Actions of any assessing officer or other public official under the tax laws of this state;

"(4) Final determinations by the tax commissioner of any preliminary, amended, or final tax assessments, reassessments, valuations, determinations, findings, computations, or orders made by him;

"(5) Adoption and promulgation of rules of the tax commissioner."

Thus, under R.C. 5703.02, the state consented to be sued regarding the subject matter of this case exclusively before the BTA. This court has previously determined that the BTA has jurisdiction over issues concerning the exemption of real or personal property from taxation. See *Zindorf v. Otterbein Press* (1941), 138 Ohio St. 287, 20 O.O. 366, 34 N.E.2d 748. The jurisdiction of the BTA over the issue of improper or illegal exemption of personal or real property from taxation was again confirmed in *Wehrle Foundation v. Evatt* (1943), 141 Ohio St. 467, 26 O.O. 29, 49 N.E.2d 52.

In *Turner Constr. Co. v. Lindley* (1980), 61 Ohio St.2d 124, 15 O.O.3d 160, 399 N.E.2d 1231, this court decided that the BTA has jurisdiction to hear and determine appeals from orders of the Tax Commissioner where the orders appealed from represent the commissioner's final determination with respect to an issue. Moreover, this court also held in *Campanella v. Lindley* (1981), 67 Ohio St.2d 290, 21 O.O.3d 182, 423 N.E.2d 472, that the BTA has jurisdiction to hear a county auditor's appeal regarding the apportionment of the value of public-utility property. Furthermore, this court held in *Hatchadorian v. Lindley* (1983), 3 Ohio St.3d 19, 3 OBR 491, 445 N.E.2d 659, that the determination of the value of public-utility property subject to taxation under R.C. Chapter 5727 was subject to an appeal to the BTA by a county auditor.

In discussing the right to appellate review of a tax determination, we held in *Avon Lake School Dist. v. Limbach* (1988), 35 Ohio St.3d 118, 119, 518 N.E.2d

1190, 1191, that "[a] litigant has no inherent right to appeal a tax determination, only a statutory right." Implicit in our holding was that the BTA is the only statutorily recognized forum for review of a tax determination.

The appellants in this case are presenting claims which fall directly under our prior holdings in *Campanella* and *Hatchadorian*. These cases specifically establish that the BTA has jurisdiction over the issue presented herein.

The county auditors (as appellants in this case), by invoking the jurisdiction of the BTA to overturn the same determinations of the Tax Commissioner which are challenged in this case, have in essence recognized the BTA's jurisdiction in this matter. The BTA, upon motion by Columbia Gas, dismissed the auditors' claims related to tax years 1983 through 1987 on the basis that the notices of appeal had not been timely filed, but did accept jurisdiction over the 1988 claim. While the BTA refused to accept jurisdiction over all the auditors' claims, the appellants could have appealed the dismissal of some of these claims (*i.e.*, such appeal being based upon the claimed concealment of data from the auditors).

Additionally, the appellant-auditors could have discovered the treatment accorded to the noncurrent gas owned by Columbia Gas in 1985 by filing their appeal within thirty days of receiving the notice of the tax assessment and valuation. By filing a timely appeal to the BTA, the auditors would have learned of the phase-in agreement and apportionment plan through the certified record required to be filed by the Department of Taxation pursuant to R.C. 5717.02.

The court of appeals, in correctly holding that appellants' allegations failed to constitute a claim for relief in the Court of Claims, relied upon its prior holding in *Avon Lake City School Dist. v. Ohio Dept. of Taxation* (1989), 55 Ohio App.3d 171, 563 N.E.2d 754. In *Avon Lake*, the school districts brought an action in the Court of Claims complaining, as here, that the Tax Commissioner had unlawfully used the "70–30 formula" with regard to personal property owned by electric companies. The allegations in *Avon Lake* were that the commissioner had intentionally concealed both the unlawful method of allocating the value of the property and the full and true value of the property, and that the improper methods and the concealment damaged the school districts. The *Avon Lake* court, in affirming the grant of the defendant's motion for judgment on the pleadings by the Court of Claims, held that R.C. Chapter 5727 and this court's holding in *Condee, supra,* imposed no duty on the commissioner for the benefit of school districts, and that any duty imposed by R.C. Chapter 5727 was only a public duty upon which no claim for relief could be founded. Moreover, the *Avon Lake* court decided that R.C. Chapter 119 establishes no duty on the part of the commissioner toward the

appellant school district. Furthermore, the *Avon Lake* court stated that, in failing to uniformly promulgate the "70–30 formula" pursuant to R.C. Chapter 119, the commissioner had breached no duty to the school district, and the school district could not state a claim for relief against the commissioner based upon the action. *Id.* at 174, 563 N.E.2d at 759.

The court of appeals, in its decision below, aptly points out that although the claims in *Avon Lake* were styled as conversion, concealment and breach of fiduciary duties, whereas the allegations here are based upon fraud, the underlying nature of the claims and the law to be applied to the cases are identical. We agree with the court of appeals and hold that there is no duty extending to these appellants that gives rise to an action in the Court of Claims.

It is well established that the government is not amenable to suit by a private individual for a breach of a public duty. *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 569 N.E.2d 1042; *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468; *Delman v. Cleveland Heights* (1989), 41 Ohio St.3d 1, 534 N.E.2d 835. This court has regularly found that statutory duties imposed upon state officials to regulate, inspect, license, or audit are "public" duties. As such, they do not flow to any private individual, including the individual being regulated, inspected, licensed or audited, and including any individuals who would benefit from these governmental functions. Public duties will not form the basis for liability to any such individuals in the absence of a special relationship. *Anderson, Sawicki,* and *Delman, supra.*[3]

We now apply the same law relative to the duty of appellee as might be owed to county auditors, county commissioners and school districts. The Ohio Constitution only permits taxes to be levied for *public* purposes. See *Lucas Cty. Aud. v. State, ex rel. Boyles* (1906), 75 Ohio St. 114, 134, 78 N.E. 955, 956. R.C. 5705.05 provides that one purpose of a general levy is " * * * to

---

3. In *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, paragraph four of the syllabus, this court required the following elements to be proven in order to establish when a public official owes a special duty or relationship to an individual, rather than the general public:

"(1) an assumption by the municipality [or state agency], through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's [or state agency's] agents that inaction could lead to harm; (3) some form of direct contact between the municipality's [state agency's] agents and the injured party; and (4) that party's justifiable reliance on the municipality's [state agency's] affirmative undertaking."

After reviewing the above criteria, we find that there exists no private duty between the appellee (department) and the appellants which would permit an action to go forward in the Court of Claims. Under the *Sawicki* test, it is clear that the department owed only a public duty, which could not be the premise for a lawsuit in the Court of Claims.

provide one general operating fund derived from taxation from which any expenditures for current expenses of any kind may be made * * *." R.C. 5705.03 states that the other purpose is to pay off bonds issued to make capital improvements. R.C. 5705.05(F) also provides that current expenses include the amounts necessary for tuition, the State Teachers Retirement System, and the maintenance, operation, and repair of schools. R.C. 5705.10 provides that unless otherwise prescribed, all revenue derived from general levies shall go into the general fund and that all revenue derived from special levies shall be credited to a special fund for the purpose for which the levy was made.

R.C. 5727.10 also states that it is the Tax Commissioner's responsibility to ascertain and to assess all taxable property of public utilities at its true value in money. And, R.C. 5727.15(B) sets out the method of apportioning the assessed value of public-utility personal property when the property is located in more than one taxing district in the state. Furthermore, R.C. 5727.23 instructs the Tax Commissioner to certify to the county auditor and the public utility the value of taxable property apportioned to each taxing district in the county as determined under R.C. 5727.15.

Clearly, the statutory scheme under R.C. Chapter 5727 creates *no* duty toward school districts. The taxes assessed upon public-utility property are for the general fund which, while it will help fund the schools, vests no explicit property right or interest in the schools to a particular portion of the general fund. Additionally, the Tax Commissioner is required to certify the value of the property only to the county auditor and the public utility, and not to local school boards. The absence of any duty owed to the school districts was properly noted in *Avon Lake City School Dist. v. Ohio Dept. of Taxation, supra.* For identical reasons, the department owes no duty to county commissioners.

The department's duty to certify to county auditors the value of taxable property apportioned to each taxing district is only a public duty. County auditors are not provided with any right under R.C. Chapter 5727 to sue the Department of Taxation or the Tax Commissioner for any allegedly tortious conduct. Rather, the county auditors may only challenge actions of the commissioner or the department in the BTA pursuant to R.C. 5717.02. That section provides that county auditors may appeal assessments or valuations where the revenues affected by the department's decisions would accrue primarily to the undivided general tax funds. Thus, county auditors were provided with a comprehensive right to appeal to the BTA any valuation or assessment made by the department. Conspicuously absent in R.C. 5717.02, or elsewhere, is any reference to a right to appeal granted to county commissioners or school boards.

Alternatively, the decisions reached by the lower courts here, in denying the appellants a forum in the Court of Claims for their action, are premised on the fact that the acts of the commissioner in this case involved the exercise of a high degree of official judgment or discretion as set forth in *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776.[4] Here, we conclude that appellee had the authority to enter into an agreement with Columbia Gas to achieve a stable transition of the tax treatment of property from nontaxable status to taxable status. This transition in tax treatment is an example of the discretionary actions authorized by R.C. Chapter 5727. The chapter instructs the Tax Commissioner to ascertain and determine whether the property is taxable. In ascertaining whether noncurrent gas was taxable property, the department carried out one of its discretionary functions. The determination of the taxable status of Columbia Gas's property involved the highest degree of official judgment and discretion. This is particularly so in light of the fact that such property was not considered taxable in previous years.

The agreement between appellee and Columbia Gas phased in the taxability of the noncurrent gas over a three-year period. Prior to this agreement, this property was not considered taxable, and consequently was not the source of any tax revenue. By obtaining an agreement from Columbia Gas that its property would become taxable, appellee was carrying out discretionary duties under R.C. Chapter 5727.

For the foregoing reasons, we hold that the court of appeals was correct in concluding that the appellants had not stated a claim for relief against the state in the Court of Claims, predicated upon the alleged misconduct of the Tax Commissioner in assessing, valuating and apportioning Columbia Gas's taxable personal property.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

---

4. In *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus, this court held with respect to the state's liability for the tortious conduct of its employees or agents:

"The language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a *high degree of official judgment or discretion.* However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities." (Emphasis added.)