**LEWIS et al., Appellants,**

**v.**

**OHIO DEPARTMENT OF HEALTH et al., Appellees.**

[Cite as *Lewis v. Ohio Dept. of Health* (1990), 66 Ohio App.3d 761.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–36.

Decided June 12, 1990.

*Brown, Baker, Schlageter & Craig, Martin J. Holmes* and *Scott A. Winckowski,* for appellants.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *David C. Calderhead,* for appellees.

MARTIN, Judge.

This is an appeal from a ruling by the Ohio Court of Claims sustaining appellees' motion, under Civ.R. 12(B)(6), to dismiss for failure to state a claim upon which relief could be granted.

On September 25, 1987, and for some considerable period before that, Josephine Lewis was a resident of the Manor Care Nursing Home located in Lucas County, Ohio. The nursing home was, at a time, a privately owned nursing care facility. Under R.C. 3721.01 *et seq.,* the state is given a duty to inspect such nursing homes and, in accordance with said statute, did periodically make inspections of this business.

On the above date, the appellants' decedent was in a wheel chair waiting to have her hair done and was, for a period, left unattended. Several hours later, she was found in a drainage ditch at the bottom of a hill still strapped into her wheel chair. Efforts at resuscitation were unsuccessful. It is surmised that she went through an exit which sounded an alarm, but that her exit was not discovered. Apparently, the wheel chair went out of control going down the hill and wound up in the drainage ditch.

This suit was initiated in the Ohio Court of Claims by Donald Lewis, both individually and as executor and representative of the estate of Josephine Lewis.

Appellants set out two assignments of error, the first of which states:

"I. The Court of Claims erred in granting [appellees'] Motion to Dismiss on Counts 1, 2, and 3 as [appellants] can prove a set of facts entitling recovery based upon the State of Ohio's improper inspection of the nursing home and improper enforcement of the nursing home regulations."

■ At the heart of the appellants' first assignment of error is the question as to whether the inspection and licensing procedures used by the state of Ohio could somehow have had a causal relation to the demise of appellants' decedent from the incident above described at the privately established and privately run nursing home.

The appellants cite the case of *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468. While perhaps at variance with this case on the facts, the *Sawicki* case does contain principles of law which control over the facts of this case.

Therein is stated the general principle that a governmental agency may not be found liable in negligence " * * * when its employees act or refuse to act so as to conform to a municipal ordinance and/or a state statute." In paragraph two of the syllabus, that case states:

"When a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury."

The *Sawicki* case then goes on to give the elements of the test for distinguishing between a public duty and a special duty. First of all, in this case, it must be established whether the state and its inspectors undertook an affirmative duty to act on behalf of the party who was injured. The inspection function of the state here is obviously for purposes of public safety, ultimately resulting in the issuance or refusal of licenses to operate within the structures inspected. Licensure in this case is an indication to the public that the various premises inspected throughout the course of a year by the inspecting authority will come up to minimal standards for purposes of doing business. Licensure is not a promise to one specific individual that his or her stay at a nursing home will be safe and uneventful.

The second element is whether there was any knowledge on the part of the state's agents that inaction could lead to harm. The action required of the state agency was to complete the inspection. Whether a license was issued or not is a matter of discretion which the courts of Ohio have repeatedly held to be nonactionable in cases of subsequent injuries. See *Shelton v. Indus. Comm.* (1976), 51 Ohio App.2d 125, 5 O.O.3d 286, 367 N.E.2d 51; *Oregon v. Ferguson* (1978), 57 Ohio App.2d 95, 11 O.O.3d 94, 385 N.E.2d 1084; *Cain v. State* (1984), 14 Ohio App.3d 105, 14 OBR 119, 470 N.E.2d 208, and *Schwab v. Dept. of Mental Retardation & Developmental Disabilities* (Mar. 31, 1987), Franklin App. No. 86AP–878, unreported. The duty of the agency in this case may readily be seen to be one to the public in that the repercussions of a business's failure to pass an inspection or comply with recommendations resulting from the inspection do not result in a duty and answerability to a specific individual, but, rather, may result in the loss of the business's license.

The third element requires some direct form of contact between the injured individual and the state. Appellants do not argue that the inspecting agency had any knowledge about the condition of the appellants' decedent, nor that they had had any direct contact with her. Rather, they only assume that the inspectors should have some general knowledge about people in nursing homes and, therefore, have been able to anticipate this incident and somehow avoid it. The appellants would somehow put on the state the burden of

managing, as a legal fiction, the day-to-day operation of this nursing home and presumably all others. Such, patently, is not the law.

The final element to be shown is that the appellants relied with justification on the state's assumption of the duty to inspect. Appellants fail on this element as well inasmuch as all nursing homes in the state of Ohio must be inspected and qualify for licensure in order to do business. Consequently, appellants may rely no more on the inspectors for this home than on any other home in Ohio.

Consequently, we find that the Ohio Court of Claims appropriately found that the appellants could produce no set of facts under the circumstances on which the court could base a recovery in damages against the state of Ohio. The inspectors in this case were in no different position than the dispatcher in the *Sawicki* case, wherein the appellants were precluded from recovery. To hold otherwise would be, in effect, to rule that the state, by virtue of issuing a license, agrees to become responsible for any subsequent damages that might befall any third person as a result of the licensee's actions. It clearly was not the intent of the state legislature to make the state, in effect, a superlative provider of insurance.

Appellants' second assignment of error is very similar to its first, but incorporates the federal medicare program:

"The Court of Claims erred in granting [appellees'] Motion to dismiss on Count 4 as [appellants'] can prove a set of facts entitling recovering [*sic*] based upon the State of Ohio's failure to perform [its] duties under the Federal Medicare program."

■ Appellants' argument in this assignment of error runs that, for the state to qualify under the Medicare program, it is incumbent upon the state to inspect facilities and issue licenses once the standards are met. Again, the appellants argue that the state's duty to inspect for purposes of compliance with the Medicare program should result in benefits running to a private individual.

In support of that position, appellants cite the case of *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776. However, in that case, a furlough program for convicted felons was being run by the state of Ohio, in distinction to this case, in which a nursing home was being run privately. The Supreme Court, in interpreting R.C. 2743.02, which established the Ohio Court of Claims and a limited immunity on the part of the state of Ohio, ruled that:

" * * * [T]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of

official judgment or discretion. * * * " *Id.* at 70, 14 OBR at 506, 471 N.E. at 777.

Such is the activity here complained of by the appellants. The *Reynolds* case further went on to elucidate that it is only when the " * * * decision has been made to engage in a certain activity or function * * * " that the state may be held liable in the same manner as a private party. What this case would indicate then is that, if the state undertook the day-to-day workings of this nursing home, only then would it be liable for any negligent acts.

The appellants have not pleaded, nor do the facts indicate a situation that would justify the Ohio Court of Claims granting them relief. Accordingly, both assignments of error are overruled and the judgment of the Ohio Court of Claims dismissing the complaint is affirmed.

*Judgment affirmed.*

REILLY, P.J., and STRAUSBAUGH, J., concur.

JOHN D. MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment.