YINGER

v.

OHIO DEPARTMENT OF TRANSPORTATION.

BECKETT, Exr.,

v.

OHIO DEPARTMENT OF TRANSPORTATION.

CONTINENTAL INSURANCE COMPANY et al.

v.

OHIO DEPARTMENT OF TRANSPORTATION.

Court of Claims of Ohio.

Nos. 89–12941, 88–13502 and 91–03644.

Decided May 12, 1992.

70

*R. Douglas Wrightsel* and *Theodore D. Sawyer,* for plaintiffs Martha A. Yinger and Donald L. Beckett.

*William L. Peters,* for plaintiff Continental Insurance Company.

*Lee Fisher,* Attorney General, *Jeffrey R. Goldsmith* and *Eric A. Walker,* Assistant Attorneys General, for defendant.

FRED J. SHOEMAKER, Judge.

The above-captioned cases were tried before the court together from September 30, 1991 through October 9, 1991, on the sole issue of liability. *Continental Ins. Co. v. Ohio Dept. of Transp.,* No. 91–03644, is a derivative action for indemnification for a settlement involving plaintiffs Donald L. Beckett (88–13502) and Martha A. Yinger (89–12941). Based upon the evidence and arguments presented, the court renders the following findings and conclusions.

The Ohio Department of Transportation ("ODOT") let a contract in 1987 for reconstruction of part of I–270 in northeast Columbus. The project, known as 267(87), was awarded on May 19, 1987, at a price of $12,356,781.10 to Complete General Construction. Work on the project began in June 1987. The project was to be completed in two stages during 1987 and 1988. To facilitate the flow of traffic, the shoulder of the southbound lane was prepared as a temporary driving lane, thereby creating four lanes on the southbound side of I–270.

An asphalt divider was installed in the middle of the southbound lanes to separate the northbound traffic from the southbound traffic on the affected section. After this installation, the northbound lanes of I–270 were closed and the northbound traffic was diverted into the two outside lanes of southbound I–270, maintaining a four-lane, two-way operation. This same process was to be implemented on the northbound lanes after completion of the first phase of construction.

The contractual documents required Complete General to maintain the traveled portion of the roadway during the construction period and to provide a watchman to monitor the situation while construction was not in process. At approximately 12:40 p.m. on Sunday, October 11, 1987, a bright and sunny afternoon, there was a multi-vehicle accident which resulted in death and injuries to the parties.

Terry Dill, a.k.a. Terry Magas ("Magas"), was operating her vehicle, with passenger Kenneth Magas sitting in the right front seat, in the left lane of the two southbound lanes of I–270. Martha A. Yinger ("Yinger") was driving another vehicle, with passenger Alvin Yinger sitting in the right front seat, southbound in the right hand lane, abreast and to the right rear portion of the Magas vehicle. At or about the thirty-five mile marker, Terry Magas observed a pothole in her driving lane and swerved to the right to avoid hitting the hole. The Magas vehicle encroached into the far right-hand lane and Martha Yinger swerved to the right to avoid striking the Magas automobile.

The Yinger vehicle's right wheels left the paved surface and entered the berm. Yinger's vehicle continued southbound with two wheels off the pavement and then quickly attempted to reenter the driving surface. Through no fault of her own, Yinger was faced with an unexpected emergency situation. She quickly attempted to drive her vehicle back onto the right lane of the southbound highway where she had been operating her automobile immediately prior to Magas' swerving into her lane. However, in making this sudden car movement, she turned her vehicle left so sharply that she lost control and her vehicle was struck on the left front and side by a vehicle driven by Hal Preece, who was following the Magas vehicle. The collision of these vehicles caused the Yinger automobile to rotate to the right and cross the asphalt center median. It was hit by a northbound tow truck driven by Steven Ashcroft.

Plaintiffs allege that there was a failure by ODOT to exercise reasonable engineering judgment regarding the entire scope of project 267(87). Plaintiffs state that the failures included the lack of use of a temporary concrete median barrier, the lack of a reduction in the legal speed limit, the reduction in lane size, a soft temporary shoulder, an excessive drop-off from the traveled portion, and construction being performed in an area prone to potholes.

The plaintiff has the burden of proof to show by a preponderance of the evidence that defendant was negligent under the circumstances. It is generally accepted in Ohio that the essential elements of negligence are: (1) a duty of care owing the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) an injury proximately resulting from such breach. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467.

While the state is not an insurer of the safety of its highways, the state has a duty to maintain its highways in a reasonably safe condition. *Knickel v. Ohio Dept. of Transp.* (1976), 49 Ohio App.2d 335, 3 O.O.3d 413, 361 N.E.2d 486. R.C. 4511.09 requires ODOT to adopt a manual and specifications for a uniform system of traffic control devices. In compliance, ODOT adopted the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways. ODOT also

developed the Location and Design Manual, which establishes policies and standards to follow when designing and maintaining Ohio highways in a reasonably safe condition.

In *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus, the court held the following:

"The language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the *state cannot be sued* for its legislative or judicial functions or the exercise of an executive or planning function involving the making of *a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.* However, once the decision has been made to engage in a certain activity or function, the state may be held liable, in the same manner as private parties, for the negligence of the actions or its employees and agents in the performance of such activities." (Emphasis added.) See, also, *Lewis v. Ohio Dept. of Health* (1990), 66 Ohio App.3d 761, 586 N.E.2d 182.

As stated in *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808, the court recognized that a great deal of independent judgment was needed for the decision-making process to avoid formulating inflexible rules. The court further referred to Section 1C of the Ohio Manual of Uniform Traffic Control Devices, which provides in pertinent part that:

"The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, *the Manual is not a substitute for engineering judgment.* Except for sections of this Manual that mandate the installation of a traffic control device, *it is the intent that the provisions of this Manual be standards for traffic control device installation, but not a requirement for installation.* Qualified engineers are needed to exercise the engineering judgment inherent in the selection of traffic control devices, just as they are needed to locate and design the roads and streets which the devices complement. * * *" (Emphasis added.)

■ The Location and Design Manual provides alternative methods for separating opposing traffic where one side of a divided highway must be used for two-way operation. Section 409.53 of the Manual provides:

"The TCMB [temporary concrete median barrier] will be used to separate the opposing traffic streams and be located as shown on Fig. 409-6. Overall length of the two way operation is not to exceed 2000 feet. *For lengths exceeding 2000 feet contact the Bureau of Location and Design* for special approval before proceeding with the maintenance of traffic plan design." (Emphasis added.)

The court finds that the construction plan review process was reasonable and that the installation of an asphalt divider to separate traffic did not breach ODOT's duty to maintain highways in a reasonably safe condition.

The court further finds that the temporary driving lane constructed on the southbound side of I–270 was within the minimum required standards. Also, a mandatory (versus advisory) reduction in the speed limit had no bearing on this accident. Speed was not a proximate cause of this accident.

The court further finds that ODOT used reasonable engineering judgment and had the right to use 203 material (soil or dirt) rather than an aggregate material consisting of crushed limestone when it constructed the berm of the highway. During construction, it was Complete General's responsibility to maintain the 203 material at a reasonable level. Of course, it would not always be level to the paved portion at all times because of highway use. Complete General also had the responsibility to check the highway for potholes and to fix them if they were on the traveled portion of the highway. Complete General was required to maintain a reasonably safe traveled portion of the roadway during the construction.

The court finds that the acts of defendant, Ohio Department of Transportation, were not the proximate cause of this accident. The court further finds by a preponderance of evidence that defendant was not negligent. Therefore, judgment will be rendered for defendant as to all parties herein.

*Judgment for defendant.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.