RAINES, f.k.a. Butterbaugh, Appellant,

v.

RUBBERMAID, INC., Appellee.

[Cite as *Raines v. Rubbermaid, Inc.* (1996), 112 Ohio App.3d 384.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 95CA0090.

Decided July 3, 1996.

*Charles Kennedy,* for appellant.

*Peggy J. Schmitz,* for appellee.

Reece, Judge.

Plaintiff, Kathi Raines, appeals from the Wayne County Court of Common Pleas grant of summary judgment in favor of defendant, Rubbermaid, Inc. We affirm.

Kathi Raines began her employment with Rubbermaid, Inc. in the compression mold department, where she operated a press. In that department she injured her right shoulder while working during June 1993. Her injury required medical care, and she had to perform light duty work at the company during her rehabilitation. This duty primarily consisted of sorting dots. She later transferred to the blow mold department.

While working in the blow mold department, she reinjured her right shoulder in September 1993. She needed medical care and again received doctor's orders to perform light duty at the company. Her doctor specifically ordered that she perform no repetitive movement and restricted her lifting of objects to those that weighed under ten pounds. This light duty restriction was extended to remain in effect until December 16, 1993.

On December 8, 1993, Steve Fowler, Raines's supervisor, ordered her to push a broom. The broom had a large brush, suiting it to clean a floor. Raines objected to this, believing that the order was not within the confines of her medical restrictions. Fowler then ordered her to clean belts and equipment on the machines. She performed this task with her left hand and used her right hand and arm for balance. This caused her pain. Eventually, her supervisors gave her the task of sorting handles which were destined to be placed on various products.

On December 9, 1993, Raines went to work, and Ted Heath was her supervisor. He also ordered her to push a broom. At her deposition, she testified about this order as follows:

"Q. And exactly what did Mr. Heath say to you?

"A. Grab a broom and get busy, and I told him what happened the day before. I explained everything about going to the nurse, about Steve, about going to Dave Mann. I explained everything. His response was, we have a tour coming through and I can't have you sitting around doing nothing. Get a broom, get busy. If I can find something else for you to do I will let you know. But I never seen him after that until I went and made a phone call to the doctor's office because I was in a lot of pain, and I told him that I had called the doctor and that I was going for a doctor's appointment that day.

"Q. Now, after he told you to get a broom what did you do?

"A. Got a broom.

"Q. And what did you do?

"A. Walked around with it for a little bit and I couldn't even, I couldn't even really maneuver it left-handed, so I got a regular kitchen broom I found in one of the cubby holes.

"Q.  So you had a broom, a large push broom?

"A.  Correct.

"Q.  And you walked around with it for awhile?

"A.  Correct.

"Q.  Were you just carrying it or were you pushing it along?

"A.  I was just trying to push it but I really couldn't maneuver it left-handed, so I located a regular kitchen broom and I proceeded to try and sweep with it the best that I could.

"Q.  Left-handed?

"A.  Left-handed, but I wound up using the right hand, as well.

" *  *  *

"Q.  How long did you use both hands on this kitchen broom?

"A.  Probably, I would estimate maybe 20 minutes.

"Q.  And that entire 20 minutes were you actually sweeping something?

"A.  No.

"Q.  So how long do you think you actually used that one, your right arm?

"A.  I really couldn't tell you.  I don't know.

"Q.  More than five minutes?

"A.  Between it and the push broom, probably a half hour, 45 minutes.

"Q.  You used the right arm for the push broom?

"A.  I was holding it walking like this (indicating), until I found a kitchen broom.

"Q.  But you—

"A.  I wasn't doing any like this extension movement (indicating), but yes, I did have ahold of it, because the push broom is this long (indicating) and I cannot control it one handed.

"Q.  But you were pushing it like you would have pushed the cart?

"A.  Possibly.

"Q.  It wasn't back and forth, it was just out in front of you and you were pushing it along?

"A.  I was just basically holding onto it and walking."

Further along in her deposition Raines testified:

"Q. Now, of all of these restrictions, what was said to you that made you believe you were being asked to violate these restrictions?

"A. I was ordered to do work by the supervisory staff that was repetitive, and I was instructed no repetitive movements.

"Q. What exactly were you ordered to do that was repetitive?

"A. Sweeping.

"Q. You testified that you were in fact able to push a broom in front of you without repetition; correct?

"A. I was not actually sweeping.

"Q. You were—

"A. I was holding a broom in front of me.

"Q. And you were able to do that?

"A. To hold the broom, yes.

" * * *

"Q. Were you ever told to do anything that was repetitive?

"A. Yes.

"Q. And what was that?

"A. Pushing a broom is repetitive.

"Q. And we've already discussed that you in fact did push the broom out in front of you without moving your right arm back and forth; correct?

"A. With my left hand I—I was not really pushing the broom, no. I was holding it but I did not walk around the department pushing the broom. No, I did not do that.

" * * *

"Q. And you pushed it with your body from, for about eight feet?

"A. Right.

"Q. You didn't use your arm, you didn't use a repetitive motion then?

"A. I don't recall if I did or not.

" * * *

"A. I don't recall if I used repetitive movement or not. I do recall having the broom in front of me. Exactly what the technique was, I don't recall."

Rubbermaid moved for summary judgment on Raines's employer intentional tort claim. Rubbermaid argued that although whether assigning Raines to push a broom or clean equipment normally would constitute a question of fact,

construing these assignments in a light most favorable to Raines did not produce evidence that Rubbermaid knew that those assignments were dangerous and that injury was substantially certain to occur. The trial court, after reviewing the facts, found that Rubbermaid had not committed an intentional tort and thus granted it summary judgment.

Raines appeals, raising one assignment of error: the trial court improperly granted summary judgment. She contends that Rubbermaid knew of her medical restrictions and that its employees ordered her to engage in work with the actual knowledge that this work would violate the restrictions. Specifically, she argues that the orders to push the broom and clean equipment violated her restriction of no repetitive movement and that her supervisors knew to a substantial certainty that this order would cause further injury to her shoulder. Therefore, summary judgment was improper.

When an appellate court reviews a trial court's grant of summary judgment, the appellate court applies the same standard as the trial court pursuant to Civ.R. 56(C): whether any genuine issues of material fact existed and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122.

In order to prove that an intentional tort was committed against an employee, the employee must prove the following:

"(1) [K]nowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus; *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 338, 650 N.E.2d 416, 421.

To withstand a motion for summary judgment, the injured employee must set forth specific facts that raise a genuine issue as to each part of the *Fyffe* three-prong test. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph seven of the syllabus. The burden is upon the plaintiff to establish an employer intentional tort by proof beyond that required to prove negligence and beyond that necessary to prove recklessness. *Fyffe, supra,* paragraph two of the syllabus.

Before this court reaches the issue of whether Raines met her burden under *Fyffe,* we think it is proper to initially address the issue of causation. In tort law the plaintiff must prove that the defendant's acts proximately caused

injury to the plaintiff. *Avon Lake City School Dist. v. Ohio Dept. of Taxation* (1989), 55 Ohio App.3d 171, 172, 563 N.E.2d 754, 756. The plaintiff is not relieved of this burden in an intentional tort cause of action. As the Ohio Court of Appeals for the Fifth Appellate District determined:

"It is not sufficient to demonstrate that injury was substantially certain to occur by some act or omission of the employer: the plaintiff must prove a nexus between the act or omission of the employer and her injury. The test set out in * * * *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph one of the syllabus, expressly applies only to establish intent for purposes of proving an intentional tort: proving substantial certainty of injury does not prove the entire cause of action." *Crum v. Lenkei Bros. Cabinet Co.* (Sept. 19, 1994), Knox App. No. 94–CA–6, unreported, 1994 WL 528035.

■ This court finds that Raines did not establish a nexus between the order to push the broom and the injury to her shoulder. Her deposition testimony indicates that she held the large broom in her left arm and walked around with it, but that she did not recall using repetitive movement to sweep with the broom. Furthermore, she stated she pushed the broom like a cart and that she held it only for a short time. Moreover, she testified that she held the smaller broom with her left arm and that she did not walk around the department pushing this broom.

Her testimony indicates that she did very little sweeping that day. Significantly, she could not recall if she did any repetitive movement with her shoulder while sweeping. At best, she could recall that she held both brooms and walked around with them out in front of her. Raines does not connect the order to sweep with her injury because her testimony indicates no repetitive movement on her part. Thus, we cannot say that the order to sweep constituted an order to engage in repetitive movement in violation of her medical restrictions which prevented repetitive movement. Therefore, the order to sweep could not proximately cause the injury.

■ Assuming that Raines established a causal connection still does not warrant reversal of the trial court's grant of summary judgment because she could not establish that Rubbermaid had actual knowledge that its employees' orders were substantially certain to cause injury to the shoulder. The Supreme Court of Ohio has given guidance to the lower courts when determining when an employer's actions are substantially certain to lead to an employee's injury:

"Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer

knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph two of the syllabus.

This court has noted that this paragraph of *Fyffe's* syllabus is similar to Section 8A, Comment b, of the Restatement of Torts 2d, which provides:

"If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness * * *." *Domonkas v. Firestone Sparkle, Inc.* (June 29, 1994), Summit App. No. 16232, unreported, at 10, 1994 WL 286077.

There is no genuine issue of material fact that when Raines received orders to push the broom and later to clean equipment, her supervisors knew to a substantial certainty that these orders would cause injury. Both David Mann, in his deposition and affidavit, and Ted Heath, in his deposition, testified that they believed the orders were within the restrictions. If they made a mistake, then their mistake qualified as negligence, or maybe recklessness. However, there is nothing in the record to indicate that the supervisors' mistake was a product of intentional conduct as defined by *Fyffe*. Therefore, the trial court properly granted summary judgment.

Accordingly, appellant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment accordingly.*

QUILLIN, P.J., and BAIRD, J., concur.