OPINION
{¶ 1} Plaintiff-appellant Jodi L. Haney appeals from the August 22, 2002, Judgment Entry of the Stark County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee The Timken Company on plaintiff-appellant's intentional tort claim.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In June of 1997, appellant Jodi L. Haney was hired as an apprentice mechanical maintainer[1] by appellee The Timken Company. According to appellant, her apprenticeship in the mechanical maintenance department required two years of class work and two years of working in the Gambrinus Steel Plant. After four years as a apprentice, appellant would become a journeyman with an "A classification." Appellant's Deposition at 22.
 {¶ 3} As part of her training, appellant was assigned to the utility crew for the mechanical maintenance department at the Gambrinus Steel Plant. Scott Nicholson was appellant's supervisor. When appellant arrived for work each day, she would receive a job assignment for that day from Nicholson. As an apprentice, appellant would typically work with a more experienced member of the mechanical maintenance department and would follow his or her instructions and directions. Appellant received "[a] lot of hands-on experience". Appellant's Deposition at 37.
 {¶ 4} On September 22, 1997, appellant, who was working the afternoon shift, was assigned to work with Tommy Lambert in rebuilding drive units. While working with Lambert, appellant sustained an injury to her left hand, arm and shoulder when a 150 pound drive unit fell onto her hand. After seeing a doctor in the emergency room at Columbia Mercy Medical Center and a Timken Company doctor, appellant was released to return to work on September 23, 1997 with the restriction that she could not use her left hand and arm. Appellant was advised at the Timken Medical Clinic that if she was asked to do a job requiring the use of her left arm, then she should go back to the medical clinic to complain.
 {¶ 5} When appellant reported to work on September 23, 1997, at 4:00 p.m., she informed Scott Nicholson, her supervisor, of her medical restrictions. When asked during her deposition what their discussion was about, appellant testified that Nicholson was "trying to find some one-handed jobs for me to do in the office, . . ." Appellant's Deposition at 56. Between September 23, 1997, and September 29, 1997, appellant, who was wearing a brace that went from her left hand halfway up to her elbow and also a sling, did not do any work in the plant. The following testimony was adduced when, during her deposition, appellant was asked what she recalled doing during such period of time:
 {¶ 6} "A. A little filing, and that's about it. I was in a lot of pain.
 {¶ 7} "Q. You were still in pain?
 {¶ 8} "A. Oh yeah.
 {¶ 9} "Q. Scott Nicholson knew that, right?
 {¶ 10} "A. Yes.
 {¶ 11} "Q. You told him that, right?
 {¶ 12} "A. Yes.
 {¶ 13} "Q. Scott didn't force you to go out into the plant, did he?
 {¶ 14} "A. No.
 {¶ 15} "Q. He tried to accommodate your condition at that time, correct?
 {¶ 16} "A. Yes.
 {¶ 17} "Q. A typical shift is eight hours?
 {¶ 18} "A. Yes.
 {¶ 19} "Q. How much time do you think you actually spent filing on each eight-hour shift during that period of time?
 {¶ 20} "A. On an eight-hour shift, maybe a half-hour.
 {¶ 21} "Q. And the rest of the time you were doing what?
 {¶ 22} "A. The rest of the time I was basically resting.
 {¶ 23} "Q. Resting?
 {¶ 24} "A. Yes.
 {¶ 25} "Q. Were you reading or just resting?
 {¶ 26} "A. Just resting.
 {¶ 27} "Q. Sleeping?
 {¶ 28} "A. No, not sleeping.
 {¶ 29} "Q. Just resting?
 {¶ 30} "A. Yes.
 {¶ 31} "Q. Scott didn't require you to do anything other than sit there and rest, right?
 {¶ 32} "A. Unless something came up, then he would have me help with it if it was something I could physically do.
 {¶ 33} "Q. With one arm in the office?
 {¶ 34} "A. Right." Appellant's Deposition at 69-71. Up through October 13, 1997, appellant was never asked to do anything that required use of her left arm.
 {¶ 35} After visiting the Timken Medical Clinic on October 13, 1997, appellant was once again released to return to work with the restriction that she had limited use of her left arm and hand. At the time, appellant was still wearing a brace and a sling. Between October 13, 1997, and October 31, 1997, appellant performed jobs, such as paperwork and filing, that did not require her to use her left arm or hand. During such time, appellant never went to the actual jobsite.
 {¶ 36} Appellant specifically alleged in her deposition that Scott Nicholson told her on November 1, 1997, that she had to return to her normal job. According to appellant, on November 1, 1997, when she asked Nicholson what the job assignment for the day involved, he told her that "the cold draw was leaking, that I needed to go help fix it." Appellant's Deposition at 89. Although appellant told Nicholson that the job was against her medical restrictions, he, according to appellant, said that "he didn't care" and that she "needed to get [her] ass back to work." Appellant's Deposition at 89-90. At the time, appellant was still wearing a brace and still had a sling on. In order to repair the equipment, appellant had to take the sling off.
 {¶ 37} During her deposition, appellant further testified that, on November 1, 1997, she went to the job site where she "probably pretty much stood and watched". Appellant's Deposition at 98. Appellant testified that on such date, she was not required to do anything requiring the use of her left arm. Once again, on November 2, 1997, and November 5, 1997, appellant, who was assigned to work on the three cold draw hydraulic unit, did not utilize her left arm while assisting the mechanics, however she could, with her right arm. Appellant also did not use her left hand while putting grease in the fittings of the rolls on November 6, 1997.
 {¶ 38} On November 6, 1997, appellant went to the Timken Medical Clinic. While at the medical clinic, appellant told a nurse "that I was on restrictions, and that my supervisor was making me do my normal jobs, and I didn't feel that I was physically up to par to be doing that." Appellant's Deposition at 84. Appellant testified during her deposition that when she told the doctor the same thing, the doctor responded that "there was no way I was able to do my regular job, that I still needed to have restrictions and be on light duty." Appellant's Deposition at 85. The doctor at the medical clinic, on a "Statement of Physical Condition" dated November 6, 1997, indicated that appellant was able to perform company work with the specific restriction that she had limited use of her left arm and hand. When she reported to work the next day, appellant gave Nicholson this statement and told him that she should not be doing her normal job since she "was still on restrictions". Appellant's Deposition at 118. Nicholson then assigned her to tighten anchor bolts on the guide rails for the ten envelope furnace in the Gambrinus Steel Plant using an eight to ten pound wrench. According to appellant, she was forced to walk heel-to-toe while performing such job because of the close proximity of the guide rails to an approximately four foot deep open utility slot/trench on the plant floor. See Appellant's Affidavit attached to her brief in opposition to appellee's Motion for Summary Judgment. While the utility slot/trench is usually covered, the covers are taken off in order for employees to get in to work on them. Nicholson Deposition at 38. Since the guard to the slot/trench had been removed, appellant knew that she had to watch out for the utility slot/trench while tightening the anchor bolts. Appellant's Deposition at 130. While tightening the bolts, appellant's back was toward the utility slot/trench.
 {¶ 39} After tightening three bolts using her right hand, appellant, who testified that she did not use her left hand at all, stood up to talk with a co-worker. The following testimony was adduced when appellant, during her deposition, was asked what happened:
 {¶ 40} "A. I turned back around to kneel back down. I took a little step forward. When I took a step forward, the middle of my boot caught the lip of the utility slot and down I went.
 {¶ 41} "Q. Which boot went into the utility slot?
 {¶ 42} "A. The right.
 {¶ 43} "Q. And your testimony is, the cover was not on the utility slot?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. You were aware that there was this trench right there, correct?
 {¶ 46} "A. Yes.
 {¶ 47} "Q. And when you were tightening the bolts, you were aware that you had to be careful about that trench, right?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. When you say that your boot caught the lip, what part of the — I don't know how to phrase this. Would this trench be just — well, you didn't know how wide it was, but was there a piece of metal or something on the lip, or was it just the edge of the concrete?
 {¶ 50} "A. I believe it was just the edge of the concrete.
 {¶ 51} "Q. Did your foot go down into the hole and then catch the edge, or did you step off the edge? Or exactly how did that occur?
 {¶ 52} "A. I took a step, and my — I came down with — my boot was on the middle of the edge. The middle of my boot was on the edge, and I fell down into it. I'm not sure how my leg was when I fell down into it, but I know it scraped the right side.
 {¶ 53} "Q. Were you in the process of turning around when you were making that turn?
 {¶ 54} "A. Yes.
 {¶ 55} "Q. And you're saying your boot caught the edge of the trench and slipped down inside (indicating)?
 {¶ 56} "A. Yes.
 {¶ 57} "Q. Similar to that motion I just showed, if this would be the length of this boot, you came down on the edge and twisted it?
 {¶ 58} "A. Yes." Appellant's Deposition at 138-140.
 {¶ 59} Appellant admitted that she had misjudged when she was turning around and that, by accident or inadvertently, she had stepped on the edge of the slot/trench, causing her to fall.
 {¶ 60} On August 6, 2001, appellant filed a complaint against appellee in the Stark County Court of Common Pleas, alleging that appellee had committed an intentional tort. Subsequently, appellee filed a Motion for Summary Judgment. After appellant, with leave of court, filed a brief in opposition to the same, appellee filed a reply brief. As memorialized in a Judgment Entry filed on August 22, 2002, the trial court granted appellee's motion, holding that appellant had failed to establish the elements necessary to prove an intentional tort and that appellant "did not meet her burden of proving a nexus between an act or omission of Timken and her injury."
 {¶ 61} It is from the trial court's August 22, 2002, Judgment Entry that appellant now appeals, raising the following assignment of error:
 {¶ 62} "The Trial Court Erred In Granting Summary Judgment To Appellee."
 I {¶ 63} Appellant, in her sole assignment of error, argues that the trial court erred in granting appellee's Motion for Summary Judgment on appellant's intentional tort claim. We disagree.
 {¶ 64} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Civil Rule 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support is claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt (1996), 75 Ohio St.3d 280,662 N.E.2d 264.
 {¶ 65} In order to establish a prima facie case of a common law intentional tort, an employee must demonstrate each of the following: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115,570 N.E.2d 1108, paragraph one of the syllabus. There is an extremely high burden of proof to establish an intentional tort of an employer. As stated by the court in Fyffe: "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk-something short of substantial certainty-is not intent." Id. at paragraph 2 of the syllabus.
 {¶ 66} However, before addressing the issue of whether appellant met the Fyffe test, the issue of causation must be first addressed. In tort law, the plaintiff must prove that the defendant's acts proximately caused injury to the plaintiff. Avon Lake City School Dist. v. OhioDept. of Taxation (1989), 55 Ohio App.3d 171, 172, 563 N.E.2d 754, 756. In an intentional tort cause of action, the plaintiff is not relieved of this burden. As this Court previously has held:
 {¶ 67} "It is not sufficient to demonstrate that injury was substantially certain to occur by some act or omission of the employer: the plaintiff must prove a nexus between the act or omission of the employer and her injury. The test set out in * * * Fyffe v. Jeno's, Inc.
(1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph one of the syllabus, expressly applies only to establish intent for purposes of proving an intentional tort: proving substantial certainty of injury does not prove the entire cause of action." Crum v. Lenkei Bros. Cabinet Co.
(Sept. 19, 1994), Knox App. No. 94-CA-6. See also Raines v. Rubbermaid,Inc. (1996), 112 Ohio App.3d 384, 678 N.E.2d 998.
 {¶ 68} In the case sub judice, we find that the trial court did not err in granting appellee's Motion for Summary Judgment since appellant did not establish a nexus between any act or omission of The Timken Company, her employer, and her injury. During her deposition, appellant testified that performing light duty work while under medical restrictions did not preclude her from working on the plant floor. As is stated above, appellant, in her deposition, further testified that, prior to her accident on November 7, 1997, she had tightened two or three bolts using her right arm and hand and that she did not use her left hand at all. Appellant also testified that she was able to handle the eight to ten pound wrench used to tighten the anchor bolts with one hand. When asked whether she was "going to do the work to the extent that you could without using the left arm," appellant responded in the affirmative. Appellant's Deposition at 151. Appellant further admitted that her co-workers "agreed that they would allow you to tighten with your right arm as much as you could" and that they "would come back and finish off the tightening." Appellant's Deposition at 150-151.
 {¶ 69} In addition, appellant testified that when she arrived at the jobsite on November 7, 1997, she realized that the cover on the utility slot/trench had been removed and that, for such reason, she knew that she had to watch out for the utility slot/trench while tightening the anchor bolts. The following testimony was adduced when appellant was asked whether she knew the utility slot/trench was there:
 {¶ 70} "A. Yes.
 {¶ 71} "Q. You knew the trench was uncovered?
 {¶ 72} "A. Yes.
 {¶ 73} "Q. You knew you had to be aware of that trench while you were working, right?
 {¶ 74} "A. Yes.
 {¶ 75} "Q. You simply misjudged when you were turning around, correct?
 {¶ 76} "A. Yes.
 {¶ 77} "Q. And you inadvertently or by accident stepped on the edge, which caused you to fall, correct?
 {¶ 78} "A. Yes. There's not much room to walk in there." Appellant's Deposition at 143-144.
 {¶ 79} Based on the foregoing, we find that appellant has failed to establish a nexus between her job assignment of tightening anchor bolts and the accident. As noted by appellee in its brief, appellant was not injured while tightening the anchor bolts as directed by her supervisor that day. Rather, by her own admission, appellant was injured when she tripped or fell after failing to pay attention to where she was stepping. As is stated above, appellant admitted that she knew that the utility slot/trench was uncovered and that, for such reason, she had to be careful. However, appellant also conceded that the accident occurred after she "misjudged" and either inadvertently or by accident stepped into the slot/trench. Thus, it was not the act of tightening the anchor bolts that caused appellant to fall, but rather appellant's inattention. Moreover, there is no evidence in the record that, in order to perform the function of bolt tightening, appellant had to use her previously injured left hand and/or arm for balance. In short, we concur with the trial court that appellant "did not meet her burden of proving a nexus between an act or omission of Timken and her injury." We find that there was no causal connection between appellant's job assignment on November 7, 1997, and how her injury occurred. Appellant's action in stepping into the utility slot/trench was unrelated to her job assignment on such date.
 {¶ 80} Assuming, arguendo, that appellant established such a causal connection, we find that the trial court did not err in granting summary judgment to appellee since appellant clearly did not satisfy the second prong of the Fyffe test. We find that appellant failed to establish that appellee had actual knowledge that injury to appellant was a substantial certainty. There is no evidence that the task that appellant was performing when she was injured was inherently dangerous. As is stated above, the job assigned to appellant on November 7, 1997, did not require appellant to use her left arm or hand and, therefore, did not violate her medical restrictions. By her own admission, appellant was able to perform the task of tightening anchor bolts with her right arm only. As noted by appellee, "[t]his task was well within the Plaintiff's medical restriction of limited use of her left arm." Based on the above, we find that there is no genuine issue of material fact that when appellant was ordered to tighten anchor bolts, Nicholson, her supervisor, or anyone else at Timken knew to a substantial certainty that such order would cause injury to appellant. See Raines, supra.
 {¶ 81} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 82} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Hoffman, P.J. and Boggins, J. concur
[1] A mechanical maintainer "[p]erforms all types of mechanical, pipefitting, welding, construction, maintenance, and repair work." See The Timken Company Job Description attached as Defendant's Exhibit 1 to appellant's deposition.